## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                              No. CR 18-0760 JB

NANCY NUNEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Nancy Nunez's Objections to the Presentence Report, Motion for Reasonable Sentence and Sentencing Memorandum, filed September 14, 2018 (Doc. 15)("Objections"). The primary issue is whether the 2-level enhancement for Abuse of a Position of Public or Private Trust applies when the Defendant Nancy Nunez used her Bureau of Indian Education (BIE) Government Purchase Card to obtain three Apple MacBook Pro laptop computers. The Court will sustain Nunez' Objection to the 2-level enhancement, because Nunez' discretion to make purchases was conditioned on her direct supervisor's express approval and, therefore, she lacked the substantial discretion inherent in a position of public or private trust. See United States v. Spear, 491 F.3d 1150, 1154 (10th Cir. 2007).

Nunez argues that the 2-level increase for Abuse of a Position of Public or Private Trust should not apply, because "supervisor approval was required for all purchases made on the government credit card held by Ms. Nunez." Objections at 4. The supervisor-approval requirement indicates that Nunez did not occupy a position of trust sufficient to satisfy the United

States Court of Appeals for the Tenth Circuit's standard for finding an abuse of a position of public or private trust. Thus, the Court will not apply the 2-level increase.

Section 3B1.3 of the United States Sentencing Guidelines, entitled "Abuse of Position of Trust or Use of Special Skill," provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

U.S. Sentencing Guidelines Manual § 3B1.3. (U.S. Sentencing Comm'n 2018)("U.S.S.G."). Section 3B1.3's "primary concern . . . is to penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong." United States v. Guidry, 199 F.3d 1150, 1159 (10th Cir. 1999)(internal quotation marks omitted)(quoting United States v. Koehn, 74 F.3d 199, 201 (10th Cir. 1996)).

To establish abuse of a position of trust for purposes of § 3B1.3's 2-level upward adjustment, the United States must prove: (i) "the person occupies a position of trust," and (ii) "the position of trust was used to facilitate significantly the commission or concealment of the crime." United States v. Spear, 491 F.3d at 1153 (citing United States v. Morris, 286 F.3d 1291, 1295 (11th Cir. 2002)). The Sentencing Guidelines' Application Note 1 to § 3B1.3 provides the definition for a position of trust:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some

significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3, Application Note 1. The Tenth Circuit has noted: "Our cases interpreting the guideline make clear that the term 'position of trust' is a bit of a misnomer. It actually has little to do with *trustworthiness* and everything to do with *authority* and *discretion*." United States v. Spear, 491 F.3d at 1154 (emphases in original).

The first prong of § 3B1.3's abuse-of-trust enhancement test analyzes whether the person occupies a position of trust in relation to the offense's victim. The Tenth Circuit has noted that "[t]he question of whether an individual occupied a position of trust is evaluated from the victim's perspective." United States v. Guidry, 199 F.3d at 1160. Thus, "the position of trust must be found in relation to the victim of the offense." United States v. Guidry, 199 F.3d at 1160. The Tenth Circuit has stated:

> We have applied § 3B1.3 in two types of cases: "The first is where the defendant steals from his employer, using his position in the company to facilitate the offense," and the "second is where a 'fiduciary or personal trust relationship exists' with other entities [not the employer], and the defendant takes advantage of the relationship to perpetrate or conceal the offense."

United States v. Guidry, 199 F.3d at 1160 (alterations in United States v. Guidry but not in source)(quoting United States v. Brunson, 54 F.3d 673, 677 (10th Cir. 1995)). See United States v. Brunson, 54 F.3d at 677 ("In the typical case where § 3B1.3 applies, the victim is a business and the defendant is an employee who has taken advantage of the knowledge and responsibilities acquired by virtue of his or her position within the company to embezzle or otherwise steal from the company.").

The Tenth Circuit's decision in United States v. Queen, 4 F.3d 925 (10th Cir. 1993), is instructive in analyzing "whether an individual occupies a position of trust . . . from the perspective

of the victim." 4 F.3d at 929. In United States v. Queen, the defendant was the president of Queen Metals Exchange, Inc. ("QMX"), a corporation which mailed postcards to individuals advertising itself as a brokerage firm specializing in precious metal and currency accounts. 4 F.3d at 926. When individuals would inquire about investing with QMX, a company representative would represent that investors' money would be used to purchase precious metals and currencies, that investors would receive a return between forty-three percent and eighty-nine percent annually, that they would not lose money the first year, and that QMX did not engage in futures and options trading. See 4 F.3d at 926. In reality, little of the investors' money was used to purchase metals and currencies; rather, "a majority of investors' funds were either dissipated in the commodity future's market or used for the defendant's own personal expenses." 4 F.3d at 926. The defendant pled guilty to wire fraud, and, at the sentencing hearing, the district court rejected the United States' suggested offense level and instead adopted the United States Probation Office's recommendation for a 2-level upward adjustment under U.S.S.G. § 3.B1.3 based on the defendant's abuse of a position of trust, "because of the existence of a fiduciary relationship between Mr. Queen and his investors." 4 F.3d at 927 (alterations omitted)(internal quotation marks omitted). The defendant argued that he did not occupy a position of trust. He asserted that "§ 3B1.3 only applies to individuals who occupy real positions of employment within a business or organization that give rise to relationships of trust," and "that he did not occupy a real position of trust because his asserted status as an investment advisor/broker was part of the fraudulent misrepresentations he made to his victims." 4 F.3d at 928. The Tenth Circuit noted that "[t]here is no question that, had the defendant actually been an investment advisor/broker as he represented to his victims, he would have occupied a position of trust under" the § 3B1.3 abuse-of-trust analysis

at the time that the Tenth Circuit decided United States v. Queen, as it compared a defendant's duties with other employees. 4 F.3d at 929. The test analyzed

> the extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; defendant's duties as compared to those of other employees; defendant's level of specialized knowledge; defendant's level of authority in the position; and the level of public trust.

4 F.3d at 928-29 (quoting United States v. Williams, 966 F.2d 555, 557 (10th Cir.1992)). The Tenth Circuit reasoned that, because United States v. Williams was concerned with "penalizing defendants who take advantage of a position that provides them with the freedom to commit a difficult-to-detect wrong," the focus should be on whether the victim believes that the defendant holds such a position, rather than whether the defendant is actually employed in the position:

> In *Williams*, we indicated that a primary concern of § 3B1.3 is with penalizing defendants who take advantage of a position that provides them with the freedom to commit a difficult-to-detect wrong. *See also*, [United States v.]*Fox*, 999 F.2d 483, 486 [(10th Cir. 1993)]; *United States v. Lieberman*, 971 F.2d 989, 993 (3rd Cir. 1992)("[T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong.")(quoting *United States v. Hill*, 915 F.2d 502, 506 (9th Cir. 1990)). This focus suggests that the question of whether an individual occupies a position of trust should be addressed from the perspective of the victim. *See United States v. Booth*, 996 F.2d 1395, 1396 (2d Cir.1993); *United States v. Castagnet*, 936 F.2d 57, 62 (2d Cir. 1991); *United States v. Hill*, 915 F.2d 502, 506 n .3 (9th Cir. 1990). A defendant who convinces a third party that he occupies a formal position of trust may possess the same freedom to commit a difficult-to-detect crime as an individual who actually possesses such a position. Indeed, in many situations the absence of any institutional constraints may provide a defendant who merely pretends to occupy a formal position of trust with even greater freedom to commit a difficult-to-detect wrong than his or her legitimate counterpart.

United States v. Queen, 4 F.3d at 929.

While United States v. Queen provides insight into how to analyze whether the defendant holds a position of trust from the victim's perspective, the Tenth Circuit has not defined the victim for § 3B1.3's purposes:

> The question of how broadly or narrowly the term "victim" should be defined in relation to the position of trust held by the defendant was not raised at any point in this case. Thus, we do not address the issue except to observe that it is a matter of dispute among the circuits.

United States v. Edwards, 325 F.3d 1184, 1188 n.1 (10th Cir. 2003)(citing United States v. Guidry, 199 F.3d at 1160 n.6 (discussing cases)). At the least, the victim applies to individuals, see, e.g., United States v. Queen, 4 F.3d at 929, and to "entities" or businesses, e.g., United States v. Brunson, 54 F.3d at 677.

Nunez did not hold a position of public trust for purposes of § 3B1.3's 2-level upward adjustment. To apply the adjustment, the United States must prove that Nunez (i) occupied a position of trust and (ii) used that position to facilitate her crime. See United States v. Spear, 491 F.3d at 1153. The San Felipe School Business Manager position did not afford Nunez "the freedom to commit or conceal a difficult-to-detect wrong," United States v. Guidry, 199 F.3d at 1159, because all purchases made by an individual holding this position required a supervisor's approval, see Presentence Investigation Report ¶ 12, at 4, filed May 24, 2018 (Doc. 9)("PSR"). In this case, such approval came from Nunez' supervisor, Ruby Montoya. See PSR ¶ 11, at 4 ("Nunez's supervisor Ruby Montoya, . . . approved all purchases made by Nunez."). Montoya "was in charge of approving all purchases concerning the school . . . . Montoya supervised Nunez . . . . Montoya gave a detailed explanation on the purchasing process and how she signed for approval of all purchases." PSR ¶ 12, at 4. Such a requirement runs counter to the Sentencing Guidelines' characterization of public trust as "substantial discretionary judgment that is ordinarily

given considerable deference." U.S.S.G § 3B1.3, Application Note 1.  Absent Montoya's approval, Nunez had neither "authority" nor "discretion" to make purchases.  United States v. Spear, 491 F.3d at 1154.

The United States' reliance on United States v. Queen is unpersuasive.  The United States argues that Nunez' position as a BIE Government Purchase Card holder provided Nunez the "freedom to commit a difficult-to-detect wrong," because Nunez "was able to bribe her supervisor into conspiring with her to steal from the government using her purchase card, [and] it was not at all easy for investigators from the Department of the Interior Office of the Inspector General to catch on to her scheme."  United States Sentencing Memorandum, filed September 19, 2018 (Doc. 16)(citing United States v. Queen, 4.F3d at 928-29).  Unlike the unfettered decision-making authority of the corporate president in Queen v. United States, Nunez' position as Business Manager required her to obtain her supervisor's approval every time she sought to use her purchase card.  Nunez received approval in this case, not by abusing her position, but rather by forming a conspiracy with Montoya, which is a separate criminal act.  See 18 U.S.C. § 371.  The United States' argument is inconsistent with the fact that Nunez' position required her supervisor's consent to engage in her scheme, i.e., but for Montoya's express approval, Nunez lacked the authority to make the unlawful purchases.  Such a requirement is an "institutional constraint[]" designed to limit the freedom to commit a difficult-to-detect wrong.  United States v. Queen, 4 F.3d at 929.  That the constraint failed to prevent Nunez' crime is irrelevant to the Court's analysis whether the position itself provided the freedom to commit the wrong; the Court finds that the job itself did not give that freedom.  Thus, because Nunez' position required her supervisor's approval before making purchases, Nunez did not hold a position of trust sufficient to warrant a 2-level enhancement.  See U.S.S.G. § 3B1.3.

**IT IS ORDERED** that the Objection to the 2-level enhancement in the Defendant Nancy Nunez's Objections to the Presentence Report, Motion for Reasonable Sentence and Sentencing Memorandum, filed September 14, 2018 (Doc. 15), is sustained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Paul Mysliwiec
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Ahmad Assed
Law Office of Ahmad Assed & Associates
Albuquerque, New Mexico

    *Attorneys for the Defendant*